The bill was filed by John Witherspoon and William P. Witherspoon against Abner Carmichael, and set forth, in substance, that James W. Dula and certain other infants, by their guardian, Nelson A. (144) Strange, and other complainants of full age, filed their bill of complaint against the present plaintiff, William P. Witherspoon, in the court of equity for Wilkes County, and obtained a decree against him at April Term, 1839, for $3,544.84, upon which executions issued from time to time, which went into the hands of the defendant, who was then sheriff of Wilkes County; that the plaintiff William made many payments on the said executions during the years 1840, 1841, and 1845, making in the whole the sum of $3,823.15, for which he had taken receipts from the said defendant as sheriff; that besides these sums, the plaintiff William paid to the defendant, in the summer of 1841, the sum of $393.16 in the following manner, to wit: the said plaintiff was indebted to the Bank of the State at Raleigh in the sum of $1,015 principal, which, with interest and the costs of collecting the same, amounted to $1,084.38, and that, for the purpose of paying the same, as well as the residue unpaid of the decree aforesaid, he had a note discounted at the branch of the Bank of Cape Fear at Salisbury for $1,500, all of the proceeds of which, except the sum of $10, went into the hands of the defendant, who paid off therewith the debt due the Bank of the State, and the *Page 112 
cost thereof, and, by express agreement, was to apply the remainder of the proceeds of the said note to the payment of the decree aforesaid; but the defendant had not done so, and had in no way accounted for the same; that the plaintiff William had taken a receipt from the defendant for the money paid on the bank debt, but had neglected to take one for the residue of the money received by the defendant from the bank at Salisbury, and the same remained in the hands of the defendant entirely unaccounted for; and that, besides this, the defendant had collected for the plaintiff William, on a judgment against one Thomas E. (145) Laws, the sum of about $60, which he had also failed to account for. The bill further charged that the defendant, in order to satisfy the residue which, he alleges, was unpaid on the decree aforesaid, levied the execution which he had in his hands, in 1845, on several slaves of the plaintiff William, and sold two of them for $683, the said plaintiff contending at the time that the said decree had been fully paid off; that the defendant was about to sell others of the said slaves, to prevent which the plaintiff William entered into a written contract with the defendant, by which it was agreed "that Col. Anderson Mitchell should examine the papers in the case N. A. Strange, guardian, v. W. P.Witherspoon, the judgment, execution, and receipts, and ascertain what balance, if any, there is yet unpaid, principal or interest, or costs," and if any should be found unpaid, the said plaintiff agreed to pay it without delay; and if the decree should be ascertained to have been overpaid, then the defendant agreed to refund the overplus, both parties mutually agreeing to abide by the award of the said Mitchell. The bill then charged that the said Mitchell examined the papers in the case referred to him, and decided that there remained due on the said decree the sum of $361.45, and rendered his award accordingly; that in making this award, the said arbitrator refused to take into consideration any payment for which the plaintiff William had no written receipts, founding his refusal upon the exact terms of the written agreement, which, the bill alleged, had been artfully drawn by a son-in-law of the defendant; whereas the bill charged that at the time when the said agreement was entered into it was expressly mentioned and understood by the parties that the money received by the defendant from the bank at Salisbury was to be taken into the account, and the bill alleged that the said matter was brought distinctly to the notice of the said arbitrator, (146) but he refused to allow it, whether because he was of opinion that he was precluded from doing so by the express terms of the written agreement or that the plaintiff William might have his remedy upon the official bond of the defendant as sheriff, for the year when the money was received by him; but the bill alleged that the plaintiff William could have no remedy at law on the said sheriff's bond for 1840, because he *Page 113 
was one of the sureties for that year, and that the said arbitrator was mistaken in both the points decided by him. The bill charged, further, that the defendant instituted a suit against the plaintiff John on the said award, in the Superior Court of Wilkes County, and at Fall Term, 1846, recovered a judgment against him for $125, for which he was about to take out execution. The bill then charged that the defendant was entirely insolvent, and that, if he were permitted to enforce the collection of the said judgment from the plaintiff William it would be an entire loss to the latter, because the execution in the defendant's hands on the decree aforesaid had been overpaid to the amount of $700 and more. The bill prayed for an injunction to restrain the collection of the judgment against the plaintiff John, and that the defendant might be compelled to account for and repay to the plaintiff William the amount which had been overpaid towards the decree aforesaid.
The injunction was granted as prayed, and the defendant filed an answer to the bill, wherein he admitted that the wards of Nelson A. Strange and others had obtained a decree against the plaintiff William, upon which execution had issued from time to time, and come to the hands of the defendant as sheriff of Wilkes County, and that the plaintiff William had made many payments thereon, for which the defendant had given him receipts, as stated in the bill. The answer also admits that the defendant received the proceeds of the note of the plaintiff William, discounted by the branch of the Bank of Cape Fear at Salisbury, and that he paid therewith the debt due from the said (147) plaintiff to the Bank of the State at Raleigh, and that for the amount so applied he had given the said plaintiff a receipt. It also admitted the collection by the defendant of the judgment in favor of the plaintiff William against Laws, but it denied that the sums remaining of the money received of the bank at Salisbury, after paying the debt due the bank at Raleigh, and the amount collected on the judgment against the said Laws, have ever been received by the defendant upon any understanding or agreement with the plaintiff William that it should be applied towards the payment of the executions of the aforesaid decree. On the contrary, it is averred that those sums of money had been appropriated for the use of the plaintiff William and had been fully accounted for to him. The answer, after much prolixity and circumlocution, admitted that the defendant could not then state how the whole of the said sums had been applied to the use of the plaintiff William, but it specified the payment to him of $130.75, for which the defendant had his written receipt, which expressed to be for a part of the money received from the bank at Salisbury, and the defendant had also taken a note given by the plaintiff William to Council and Bower for $100 as cash. The reasons assigned in the answer why the defendant *Page 114 
could not account for the residue of the said sum of money were that he had various other executions against the plaintiff William besides those above specified, and in consequence thereof had had many dealings with him in the receipt and payment of money, and that a considerable length of time had elapsed since the money from the bank at Salisbury had come to his hands. The answer then admitted that the defendant and plaintiff John entered into the written agreement for referring the matters of difference between the defendant and the plaintiff William (148) to the arbitration of Col. Anderson Mitchell, and that he had made an award thereon, as stated in the bill, but it denied expressly that the said agreement was artfully drawn up to prevent the said arbitrator from taking into consideration any payment made by the said William, for which he had no written receipt. On the contrary, it is averred that the said agreement was written by the defendant's son-in-law, at the request of both parties, was drawn according to their instructions, and was fully understood by them, and that by the said agreement the said arbitrator was not prevented from passing upon payments of any kind, whether written or otherwise, made by the said William, on the executions aforesaid, and that, in fact, the said arbitrator did not consider of the payments alleged to have been made out of the moneys received by the defendant from the bank at Salisbury, and from the judgment against Laws, and rejected them, not because the plaintiff William had no written receipts for them, but because he was satisfied that they had been otherwise accounted for to the said plaintiff. The answer admitted that the defendant had obtained judgment at law against the plaintiff John, and insisted that the submission to arbitration made by the defendant and the plaintiff John was fair, and the award thereon legal and proper, and that it was final and conclusive between the parties to it, and that the plaintiff ought not to be permitted to allege anything against it. Upon the filing of the answer, a motion to dissolve the injunction was made by the defendant and sustained by the court, and the plaintiffs prayed for and were allowed an appeal to the Supreme Court.
The motion to dissolve the injunction in this case was properly granted, and that for two very sufficient reasons. The first is that all the material allegations upon which the plaintiffs found their claims for relief are denied by the defendant; and the second is that, taking the allegations of the bill to be true, they are not sufficient to entitle the plaintiffs to the relief which they seek. The facts stated in the bill are, in substance, that the plaintiff William was entitled to *Page 115 
certain credits for payments which the defendant, as sheriff of Wilkes County, had in his hands against him; that the defendant refused to allow these credits, and that, to settle the difficulty which existed in relation thereto between the said plaintiff and the defendant, the plaintiff John and the defendant entered into a written agreement to submit the matter in dispute to the arbitration of a gentleman selected by them, and to abide by his award. This agreement, the plaintiff alleged, was artfully written by a son-in-law of the defendant, so as to preclude the arbitrator from taking into consideration and allowing some of the payments made by the plaintiff William, because he had no written receipts for them, and that the arbitrator had in fact rejected them on that account.
The answer of the defendant, though containing much irrelevant matter, and consisting much more of argument than of clear and distinct statements, denies positively all these allegations, and, for this reason alone, the injunction would be dissolved. But, besides this, there is another objection to it, apparent upon the face of the bill. The payments for which the plaintiffs insist that the plaintiff William was entitled to a credit on the executions in the hands of the defendant was a matter solely between the said William and the defendant. The bill does not state that the plaintiff John was surety to the debt for which the decree was obtained against William. It only says that the plaintiff John was the father and surety of the plaintiff William, without stating for what debt or in what manner he was surety. He was not then, for all that appears, interested in the state of the accounts between his (150) son and the defendant, and, having voluntarily entered into the agreement for the submission to arbitration of the subject of dispute between his son and the defendant, and an award having been made thereon, he cannot have relief except by impeaching the award for fraud or mistake in the agreement for the submission or in the award itself. But there is nothing stated in the bill to raise those objections. The only allegation is that the agreement was written by a son-in-law of the defendant, so as to prevent the arbitrator from considering and allowing any other payments made by the plaintiff William than those for which he had written receipts, contrary to the express understanding between the plaintiff John and the defendant; but it is not said that the defendant procured the instrument to be so written, or that the parties gave the writer instructions which he either perverted or mistook. The utmost effect which can be given to the statement in the bill, that the agreement was artfully written by a son-in-law of the defendant, is that it insinuates a fraud, which cannot be taken as a direct and positive charge; and without such a charge the plaintiffs will not be permitted to prove the fraud, and, of course, can have no relief on account of it. Story Eq. P., ch. 2, sec. 28, and ch. 5, sec. 255. The order made in the court below, *Page 116 
dissolving the injunction, is affirmed, but the answer of the defendant contains so many immaterial and irrelevant statements which, so far from being responsive to the bill or necessary to his defense, tend only to show that he was grossly and criminally negligent of his official duty as sherriff [sheriff], that we cannot give him costs.
PER CURIAM. Affirmed.
Cited: McLane v. Manning, 60 N.C. 612; Harshaw v. McCombs, 63 N.C. 77;Suttle v. Doggett, 87 N.C. 205.
(151)